IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| GABRIELLE and DARYL MEUNIER, Husband and wife, individually, and as Next Friends and Natural Guardians of CHRISTOPHER MICHAEL MEUNIER, a minor, <br><br>　　　　　Plaintiffs, <br><br>　v. <br><br>PEANUT CORPORATION OF AMERICA, a Virginia corporation; <br><br>　　　　　Defendant. | NO. _____ <br><br>Demand for Jury Trial |

## COMPLAINT FOR DAMAGES

COMES NOW the plaintiffs, by and through their attorneys of record, FLYNN PEELER & PHILLIPS, L.L.C. and MARLER CLARK, L.L.P., P.S., and allege as follows:

### I. PARTIES

1.　The plaintiffs are residents of South Burlington, Chittenden County, Vermont. The plaintiffs GABRIELLE and DARYL MEUNIER are husband and wife and the natural parents of CHRISTOPHER MEUNIER, a minor.

2.　The defendant, PEANUT CORPORATION OF AMERICA (PCA), is a Virginia corporation, organized under the laws of the state of Virginia, authorized to do business in the state of Virginia, with its principal office located at 2121 Wiggington Road, Lynchburg, Virginia, 24502. At all times relevant hereto, PCA was a manufacturer and seller of various peanut butter products.

## II. JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the defendant has certain minimum contacts with the State of Georgia such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

4.     Venue in the United States District Court for the Middle District of Georgia is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the plaintiffs' claims and causes of action occurred in this judicial district—the FDA has identified the likely source of contamination for the nationwide peanut butter *Salmonella* outbreak as the defendant PCA's Blakely, Georgia processing plant. Additionally, the defendant PCA was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## III. GENERAL ALLEGATIONS

### *Salmonella*

5.     *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other animals, including birds. *Salmonella* bacteria are usually transmitted to humans by eating foods contaminated with animal feces. Contaminated foods usually look and smell normal. Contaminated foods are often of animal origin, such as beef, poultry, milk, or eggs, but all foods, including vegetables, may become contaminated. Many raw foods of animal origin are frequently contaminated, but fortunately thorough cooking kills *Salmonella*. A food handler who neglects to wash his or her hands with soap and warm water after using the bathroom may also contaminate food.

6.      Once in the lumen of the small intestine, the bacteria penetrate the epithelium, multiply, and enter the blood within 24 to 72 hours. As few as 15-20 cells of *Salmonella* bacteria can cause salmonellosis or a more serious typhoid-like fever. Variables such as the health and age of the host and virulence differences among the serotypes affect the nature of the diagnosis. Infants, elderly, hospitalized, and the immune suppressed are the populations that are the most susceptible to disease and suffer the most severe symptoms.

7.      The acute symptoms of *Salmonella* gastroenteritis include the sudden onset of nausea, abdominal cramping, and bloody diarrhea with mucous. There is no real cure for *Salmonella* infection, except treatment of the symptoms.

8.      Persons with severe diarrhea may require rehydration, often with intravenous fluids. *Salmonella* can be treated with ampicillin, gentamicin, trimethoprim/sulfamethoxazole, or ciprofloxacin. Unfortunately, some *Salmonella* bacteria have become resistant to antibiotics, largely as a result of the use of antibiotics to promote the growth of feed animals.

9.      Persons with diarrhea usually recover completely, although it may be several months before their bowel habits are entirely normal. A small number of persons who are infected with *Salmonella* will go on to develop pains in their joints, irritation of the eyes, and painful urination. This is called Reiter's syndrome. It can last for months or years, and can lead to chronic arthritis, which is difficult to treat. Antibiotic treatment does not make a difference in whether or not the person later develops arthritis.

## Past Peanut Butter Outbreaks

10.     The first documented outbreak, in 1996, of salmonellosis associated with the consumption of peanut butter was reported in the Journal of Applied Microbiology in 2000. Between April and June 1996, 15 persons with *Salmonella* enterica serovar Mbandaka infection

were reported in South Australia. *Salmonella* Mbandaka was isolated from three opened jars of peanut butter from case households, and from three unopened jars from retail outlets. Further investigation implicated roasted peanuts from a third Australian state as the source of the *Salmonella* contamination

11.    On February 14, 2007, the United States Food and Drug Administration (FDA), as part of its investigation of a nationwide *Salmonella* outbreak, warned consumers not to eat Peter Pan and Great Value brands of peanut butter with a product code beginning 2111, and announced a recall of the products by their manufacturer, ConAgra. The CDC ultimately linked 628 persons infected from 44 states with the outbreak strain of *Salmonella* Tennessee to the consumption of the product.

## PCA Peanut Butter Outbreak

12.    On January 9, 2009, the Minnesota Department of Agriculture (MDA) announced a product advisory after MDA's preliminary laboratory testing indicated the presence of *Salmonella* bacteria in a 5-pound container of King Nut brand creamy peanut butter manufactured by defendant PCA. The contamination was discovered as a result of product testing initiated after an MDH epidemiological investigation implicated King Nut creamy peanut butter as a likely source of *Salmonella* infections in Minnesota residents. The Minnesota cases had the same genetic fingerprint as the cases in the national outbreak.

13.    On January 10, 2009, King Nut announced that *Salmonella* has been found in a five lb. tub of its peanut butter and that they were voluntarily recalling all of their peanut butter products manufactured by PCA.

14.    On January 13, 2009, PCA announced a voluntary recall of peanut butter produced in its processing facility located in Blakely, Georgia because it has the potential to be

contaminated with *Salmonella*. The FDA subsequently notified PCA that product samples originating from its Blakely, Georgia, processing plant were tested and found positive for *Salmonella* by laboratories in the states of Minnesota, Georgia, and Connecticut.

15. On January 14, 2009, Kellogg Company announced a product hold on Austin® and Keebler® branded Toasted Peanut Butter Sandwich Crackers, Peanut Butter and Jelly Sandwich Crackers, Cheese and Peanut Butter Sandwich Crackers, and Peanut Butter-Chocolate Sandwich Crackers because PCA is one of several peanut paste suppliers that the company used in its Austin® and Keebler® branded peanut butter sandwich crackers.

16. On January 16, PCA expanded its voluntary recall to include all peanut butter produced on or after August 8, 2008, and all peanut paste produced on or after September 26, 2008, in its Blakely, Georgia, plant because of potential *Salmonella* contamination. That same day, the Connecticut Department of Health confirmed it found *Salmonella* in an unopened jar of King Nut brand peanut butter manufactured by PCA at its Blakely, Georgia, processing plant.

17. Also on January 16, Kellogg Company announced a voluntary recall of certain Austin® and Keebler® branded Peanut Butter Sandwich Crackers and select snack-size packs of Famous Amos® Peanut Butter Cookies and Keebler® Soft Batch Homestyle Peanut Butter Cookies because the products have the potential to be contaminated with *Salmonella*.

18. On January 17, 2009, the FDA made an announcement to the public to avoid eating ALL peanut butter-containing products.

19. On January 19, 2009, Kellogg announces that FDA tests revealed that some of its cracker products are contaminated with *Salmonella*.

20.     As of January 19, 2009, the Centers for Disease Control (CDC) counts 474 persons from 43 states infected with the same genetic outbreak strain of *Salmonella* Typhimurium, and at least six deaths.

### **Plaintiffs' Injuries**

21.     The plaintiff's illness was caused by consumption of peanut butter product manufactured by defendant PCA.

22.     On or about November 25, the plaintiff began to suffer from symptoms that included fever, profuse and painful bouts of diarrhea that turned bloody, and vomiting.

23.     When his symptoms failed to subside, the plaintiff was taken to his doctor's office on November 28, where he was subsequently referred to the emergency room and admitted to the hospital. The plaintiff remained hospitalized until he was discharged on or about December 4, 2008.

24.     During his hospitalization, a stool sample obtained from the plaintiff was sent to a laboratory to be cultured and tested. The test results confirmed the presence of *Salmonella* Typhimurium that was genetically indistinguishable from the nationwide *Salmonella* outbreak strain identified in the PCA peanut butter product outbreak. The plaintiff also tested positive for a Clostridium difficile (C. diff.) infection.

25.     As of the filing of this Complaint, the plaintiff continues to suffer from lingering complications of his *Salmonella* Typhimurium infection, including intermittent bloody diarrhea, stomach cramps, and body aches and pains.

26.     The plaintiffs have incurred and will continue to incur medical expenses, have suffered and will continue to suffer pain, loss of enjoyment of life, emotional distress, and

medical problems in the future as a direct and proximate result of contaminated PCA peanut butter product.

## IV. CAUSES OF ACTION

### Strict Liability—Count I

27. The defendant PCA was at all times relevant hereto the manufacturer and seller of the adulterated food product that is the subject of the action.

28. The adulterated food product that defendant PCA manufactured, distributed, and/or sold was, at the time it left the defendant's control, defective and unreasonably dangerous for its ordinary and expected use because it contained *Salmonella*, a deadly pathogen.

29. The adulterated food product that the defendant PCA manufactured, distributed, and/or sold was delivered to the plaintiffs without any change in its defective condition. The adulterated food product that the defendant manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by the plaintiff.

30. The defendant PCA owed a duty of care to the plaintiffs to design, manufacture, and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. The defendant PCA breached this duty.

31. The defendant PCA owed a duty of care to the plaintiffs to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. The defendant PCA breached this duty.

32. The plaintiffs suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the defendant manufactured, distributed, and/or sold.

### Breach of Warranty—Count II

33. The defendant PCA is liable to the plaintiffs for breaching express and implied warranties it made regarding the adulterated product that the plaintiffs purchased. These express and implied warranties included the implied warranties of merchantability and/or fitness for a particular use. Specifically, the defendant PCA expressly warranted, through its sale of food to the public and by the statements and conduct of its employees and agents, that the food it prepared and sold was fit for human consumption and not otherwise adulterated or injurious to health.

34. The plaintiffs allege that the *Salmonella*-contaminated food that defendant PCA sold to the plaintiffs would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

35. The plaintiffs allege that the *Salmonella*-contaminated food that the defendant PCA sold to the plaintiffs was not fit for the uses and purposes intended, *i.e.* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

36. As a direct and proximate cause of the defendant PCA's breach of warranties, as set forth above, the plaintiffs sustained injuries and damages in an amount to be determined at trial.

### Negligence—Count III

37. The defendant PCA owed a duty to the plaintiffs to use reasonable care in its manufacture, distribution, and sale of its food product, which duty would have prevented or eliminated the risk that the defendant PCA's food products would become contaminated with *Salmonella* or any other dangerous pathogen. The defendant PCA breached this duty.

38. The defendant PCA had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent. The plaintiffs are among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

39. The defendant PCA had a duty to properly supervise, train, and monitor its respective employees, and to ensure its compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but it failed to do so and was therefore negligent.

40. The defendant PCA had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption, but it failed to do so and was therefore negligent.

41. As a direct and proximate result of the defendant PCA's acts of negligence, the plaintiffs sustained injuries and damages in an amount to be determined at trial.

<u>Negligence Per Se—Count IV</u>

42. The defendant PCA had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food product, including the requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301 *et seq.*), and the Georgia adulterated food statutes, O.C.G.A. § 26-2-1 *et. seq.*

43.     The defendant PCA failed to comply with the provisions of the health and safety acts identified above, and, as a result, was negligent *per se* in its manufacture, distribution, and sale of food adulterated with *Salmonella*, a deadly pathogen.

44.     As a direct and proximate result of conduct by the defendant PCA that was negligent *per se*, the plaintiffs sustained injury and damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs pray:

(a)     That the defendant be served with a copy of this Complaint and answer as required by law;

(b)     That the plaintiffs be granted a judgment against the defendant on Count I-IV above for monetary damages in an amount deemed appropriate by the Court to fully compensate the plaintiffs for the damages they have suffered and will continue to suffer;

(d)     That the plaintiffs be awarded reasonable attorneys fees and costs as a result of the undue litigiousness of the defendant resulting in the need to file this action;

(e)     That the plaintiffs be granted a trial by jury;

(f)      That the court award the plaintiffs the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

(g)     That the plaintiffs be awarded such other and further relief as would be equitable and just under the circumstances.

## **JURY DEMAND**

The plaintiffs hereby demand a jury trial.

        FLYNN PEELER & PHILLIPS, LLC

        **/s/Patrick S. Flynn**
        Patrick S. Flynn, GA State Bar #004765
        Charles E. Peeler, GA State Bar #570399
        Flynn Peeler & Phillips, LLC
        517 W. Broad Ave.
        Post Office Box 7 (31702)
        Albany, Georgia 31701
        Tel. (229) 446-4886
        Fax (229) 446-4884

        William D. Marler, WSBA #17233
        bmarler@marlerclark.com
        MARLER CLARK, LLP PS
        701 First Avenue, Suite 6600
        Seattle, WA  98104
        Tel. (206) 346-1888
        Fax (206) 346-1898
        (pending admission *pro hac vice*)

        Attorneys for the plaintiffs